**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CUSTOM FAB, INC.,**

    **Plaintiff,**

**v.**                                                      **Case No:   6:13-cv-1511-Orl-31DAB**

**TARA KIRKLAND,**

    **Defendant.**

## ORDER

This matter is before the Court without a hearing on Defendant Tara Kirkland's Motion to Dismiss the Amended Complaint for lack of Personal Jurisdiction or Alternative Motion to Transfer Venue ("Motion") (Doc. 23) and Plaintiff Custom Fab, Inc.'s, ("Custom Fab") Response in Opposition ("Response") (Doc. 26) as well as supporting affidavits submitted by both parties.[1]

### I.    Background

This case arises due to a non-compete clause in Kirkland's contract with Custom Fab, her former employer, and alleged misuse use of confidential information following her resignation from Custom Fab.

---

[1] Where the parties' affidavits cannot be reconciled, the trial court usually holds an evidentiary hearing to resolve the jurisdictional issue. *Abramson v. Walt Disney Co.*, 132 F. App'x 273, 275 (11th Cir. 2005) (citing *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 503 (Fla. 1989)). In this case, however, the germane parts of the allegations and affidavits can be harmonized with the exception of the state in which the underlying employment contract was signed, which the Court construes in favor of the Plaintiff. *See Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (when affidavits conflict, reasonable inferences should be construed in favor of Plaintiff).

Kirkland worked for Custom Fab, a custom pipe fabrication company, from May 2006 until April 2013 in multiple sales supervisory roles. During that time she resided in Texas and Arizona, primarily addressing custom piping needs for businesses in western states and had limited contact with Florida, related only to her employment. Following a demotion that Kirkland attributes to her increased family responsibilities, Kirkland resigned from Custom Fab. She then started working for another custom pipe business that required her to do business primarily in Arizona, Texas, and California. Custom Fab initially brought suit in Arizona, alleging substantially similar claims to the claims in this case. However, following limited motion practice in the Arizona case, Custom Fab dismissed the case and filed this case in the Middle District of Florida. Kirkland asserts that her limited contacts with Florida are insufficient to establish general or specific jurisdiction under Florida's long-arm statute.

## II.    Standard

A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999); *see also Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (describing procedure for plaintiff to establish personal jurisdiction under Florida's long-arm statute). Where a defendant challenges jurisdiction by submitting affidavits in support of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *Posner*, 178 F.3d at 1214; *see also Polski Linie Oceaniczne*, 795 F.2d at 972.

To exercise personal jurisdiction over a defendant, a federal court sitting in diversity must determine whether the exercise of jurisdiction is: (1) specific or general; (2) appropriate under the

state's long-arm statute; and (3) comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-15 (1984); *Stubbs v. Wyndham Nassau Resorts & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *see also Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989).

Specific jurisdiction is founded on a defendant's activities in the forum that are related to or arise out of the cause of action alleged in the complaint. *Stubbs*, 447 F.3d at 1360 n.3 (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000)). General jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated. *Stubbs*, 447 F.3d at 1360 n.3 (citing *Meier*, 288 F.3d at 1269). General jurisdiction permits a court to preside over claims against the defendant unrelated to the contact with the forum. *Id.*

### III. Analysis

The Plaintiff asserts Kirkland is subject to personal jurisdiction on two bases: (1) general jurisdiction and (2) specific jurisdiction under the theory that the allegedly tortious acts occurred within the state.[2] (Doc. 26 at 3). Each theory of jurisdiction is addressed in turn.

---

[2] Specific personal jurisdiction analysis requires evaluation of each count in a complaint. *KVAR Energy Sav., Inc. v. Tri-State Energy Solutions, LLP*, 608-CV-85-ORL-19KRS, 2009 WL 103645, at *3 (M.D. Fla. Jan. 15, 2009) ("A court must conduct this inquiry as to each defendant separately, and for specific jurisdiction analysis, as to each claim separately."). Here, the Plaintiff has asserted both breach of contract and tort claims, but only put forth arguments for specific personal jurisdiction based on the locus of the alleged tortious acts. (Doc. 26 at 3). In other words, Plaintiff did not argue for personal jurisdiction for the contract claim. Further, Defendant argued against personal jurisdiction on the contract issue. (Doc. 23 at 7). Accordingly, those arguments are deemed unopposed and the remaining analysis is devoted to the specific jurisdiction theory based on the location of the alleged tort.

### a. Kirkland's Contacts with Florida

Both parties agree that Kirkland's contact with Florida has been limited to business activity related to her former employment. The contacts consists of a relatively few instances of in-person visits and communications including a letter, e-mails, and phone calls.

Defendant began her employment with Plaintiff in 2006. There are conflicting statements about whether she signed the employment agreement in Florida or Texas, but the Court assumes that it was Florida for purposes of this Order. When Custom Fab hired Kirkland, she knew the custom piping industry from her prior employment in the field from 2003 to 2006. Custom Fab hired Kirkland as its Texas sales representative and she occupied various positions at Custom Fab. While Kirkland was trained on Custom Fab's computer software in Florida, she was never based in or operated out of the state. During Defendant's employment with Plaintiff she lived in Texas and then Arizona and made occasional trips to Florida for business purposes. These trips included: (1) three or fewer trips for company Christmas parties which did not include performance of business duties during the first years of her employment; (2) attending one trade show; and (3) attending a three day training conference with Custom Fab. (Doc. 23-1 ¶¶ 8, 20-21; *see also* Doc. 16 ¶¶ 14-20). For a time, Kirkland was Custom Fab's National Sale's Manager, however in or around the end of 2011 the Defendant was demoted to branch manager for Custom Fab's Phoenix, Arizona branch. (Doc. 23-1 ¶¶ 10-11). Kirkland's visits to Florida have reduced in frequency over the past few years, and her only recent trip was in January of 2012. (Doc. 23-1 ¶ 21).

The most contact Kirkland has had with Florida has been through electronic communication. Over the course of Kirkland's employment she e-mailed and called Custom Fab personnel in Florida. (Doc. 26-1 ¶¶ 9-11). Additionally Kirkland has discussed Custom Fab's pricing with at least

one of Custom Fab's clients whose territory included Florida, this conversation was recounted in an e-mail to Custom Fab's president who is based in Florida. (Doc. 26-7).

Kirkland has never resided in Florida; neither has she voted in Florida; she has never held any licenses or permits issued by Florida; and she has never owned, operated, or carried out a business venture in Florida. (Doc. 23-1 ¶¶ 2, 17-18).

### b. General Personal Jurisdiction

Section 48.193(2), Florida Statutes, grants general jurisdiction as follows:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

" 'Substantial and not isolated activity' has been found to mean 'continuous and systematic general business contact' with Florida." *Woods v. Nova Companies Belize Ltd.*, 739 So. 2d 617, 620 (Fla. Dist. Ct. App. 1999) (quoting *Achievers Unlimited, Inc. v. Nutri Herb, Inc.*, 710 So. 2d 716, 720 (Fla. Dist. Ct. App. 1998)). Florida courts have remarked that "the facts required to assert this general jurisdiction must be 'extensive and pervasive.' " *Am. Overseas Marine Corp. v. Patterson*, 632 So. 2d 1124, 1127-28 (Fla. Dist. Ct. App. 1994) (internal quotes omitted). A recent decision by a Florida appellate court noted "[e]ntering into an employment agreement in Florida, even an agreement that acknowledges Florida as the only place where disputes arising under the agreement may be entertained . . . does not confer general jurisdiction over an individual." *Taylor v. Gutierrez*, 3D12-3045, 2013 WL 6246464, at *3 (Fla. Dist. Ct. App. Dec. 4, 2013) (not presently released for publication in permanent law reports) (footnote omitted).

Kirkland was an employee of a Florida company and the Court assumes she executed her employment contract in Florida. The contract includes a forum selection clause specifying Florida, however, that is not enough for general jurisdiction. *See Biloki v. Majestic Greeting Card Co., Inc.*,

33 So. 3d 815, 821 (Fla. Dist. Ct. App. 2010) ("There needs to be more than a contractual relationship for general jurisdiction to apply between an out-of-state employee and Florida employer."); *see also Taylor*, 3D12-3045, 2013 WL 6246464, at *3. Kirkland's physical presence in Florida consists of only a few visits, which had decreased in frequency in recent years. *See Pathman v. Grey Flannel Auctions, Inc.*, 741 F. Supp. 2d 1318, 1322-23 (S.D. Fla. 2010) (discussing occasional visits to Florida by defendant, declining to find general personal jurisdiction).

The most contact Kirkland had with Florida was via electronic communication with Custom Fab personnel. While Plaintiff points out many communications, a substantial subset of those are from the Plaintiff to Kirkland—not the other way around—and therefore play no role in the jurisdictional analysis. *See Vaughn v. AAA Employment, Inc.*, 511 So. 2d 1045, 1046 (Fla. Dist. Ct. App. 1987) ("[I]t must be the acts of the [defendant] described in the long-arm statute that confer the jurisdiction . . . ."). Even if Kirkland initiated contact with Custom Fab's president and other sales representatives in Florida, that does not establish "substantial activity" within the meaning of the statute. *See Biloki*, 33 So. 3d 815, 821 (Fla. Dist. Ct. App. 2010) (holding that regular submission of orders from the defendants to the plaintiff's Florida warehouse for Midwest customers was insufficient to establish "substantial activity"); *Pathman*, 741 F. Supp. 2d at 1323 (finding no general personal jurisdiction under circumstance where "[a]t most, Defendants' activity in the forum state consists of traveling to Florida on business two to three times a year, occasionally visiting the state as a tourist, phone calls, e-mail, and some mail solicitations.").

The cases cited by Plaintiff have roughly similar fact patterns, but they are distinguishable. In *AutoNation, Inc. v. Hankins*, 03-14544 CACE (05), 2003 WL 22852206 (Fla. Cir. Ct. Nov. 24, 2003) the defendant agreed to submit himself to jurisdiction in Florida in various documents, he visited Florida for business at least three times, and received regular instruction from his Florida

employer. *Id.* at *3-4. Notably, all of this activity took place within the relatively condensed period of approximately fifteen months. *Id.* at *1-2. Further, the Florida court noted that those activities within that short time were a "close question" under section 48.193(2). *Id.* at *5. *Nordmark Presentations, Inc. v. Harman*, 557 So. 2d 649 (Fla. Dist. Ct. App. 1990) had roughly analogous facts, but the contact was condensed to a two-year timeframe. While the defendants in *AutoNation* and *Nordmark Presentations* fell just inside the line of general personal jurisdiction, Kirkland, whose contact spanned seven years, falls to the other side of it. In short, the Plaintiff has failed to meet "the very high threshold [that] must be met in order for general jurisdiction to be exercised over a nonresident defendant in Florida." *Pathman*, 741 F. Supp. 2d at 1323.

### c. Specific Jurisdiction

Under Florida Statutes § 48.193(1)(a)(2) specific personal jurisdiction occurs when a person commits "a tortious act within this state." A defendant need not be physically present in Florida to commit a tort within the state, however personal jurisdiction under § 48.193(1)(a)(2) occurs when the Plaintiff establishes "that the activities in Florida 'w[ere] essential to the success of the tort.' " *Williams Elec. Co., Inc. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir. 1988) (quoting *Watts v. Haun*, 393 So. 2d 54, 56 (Fla. Dist. Ct. App. 1981)); *Kelly v. Kelly*, 911 F. Supp. 518, 522 (M.D. Fla. 1995) (distinguishing *Watts* and stating "[p]laintiff fails to allege or establish any acts providing a 'substantial' part of the alleged tort occurred in Florida.").

The Plaintiff alleges two torts: Count III, Unfair Competition and Count IV Misappropriation[3] of Trade Secrets pursuant to Florida Statutes § 688.003. "To state a claim for unfair competition under Florida common law, []claimant must allege (1) deceptive or fraudulent

---

[3] The Amended Complaint uses the term "Theft of Trade Secrets" rather than misappropriation, yet cites § 688.003, which proscribes "misappropriation of trade secrets," not theft.

conduct of a competitor and (2) likelihood of consumer confusion." *See Whitney Info. Network, Inc. v. Gagnon*, 353 F. Supp. 2d 1208, 1212 (M.D. Fla. 2005). As for Misappropriation of Trade Secrets, the alleged wrongful act by the Defendant is:

> Disclosure or use of a trade secret of another without express or implied consent by a person who . . . [a]t the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . . .

Fla. Stat. § 688.002(2)(b)2.b.[4]

Both tort theories are predicted on the idea that Kirkland used protected information that she legitimately received during her employment with the Plaintiff to illegitimately aid her new employer. (*See* Doc. 16 ¶¶ 61-75 (discussing Kirkland's alleged acts on behalf of Custom Fab's competitor—none of which occurred in Florida)). The Plaintiff, however, does not allege that Kirkland had any contact with Florida following her resignation. The alleged wrongs occurred, if at all, after Kirkland's resignation, and accordingly, not in Florida.

Under some circumstances tortious acts causing injury in Florida may confer specific jurisdiction, and in this case the Plaintiff may ultimately feel the impact of reduced sales to their western branch offices. However the impact here is indirect. *Blumberg v. Steve Weiss & Co., Inc.*, 922 So. 2d 361, 364 (Fla. Dist. Ct. App. 2006) (specific jurisdiction based on defendant causing injury in Florida, must be based on defendant directly causing injury in Florida); *Korman v. Kent*, 821 So. 2d 408, 411 (Fla. Dist. Ct. App. 2002) ("If the Legislature intended for [Florida Statutes §

---

[4] While Plaintiff does specify a violation of Florida Statutes § 688.002(2)(b)2.b. it is the only subsection that fits the alleged wrong. (*See* Doc. 16 ¶¶ 110-12 (asserting Kirkland's duty to maintain secrecy of Custom Fab's confidential information)).

48.193(1)(a)(2)[5]] to encompass all tortious acts which were complete outside Florida but ultimately have consequences here only because a Florida resident suffers damages, we believe it would be incumbent on the Legislature to make that statutory purpose clear in the plainest of language."). As such, there is no specific jurisdiction over the Defendant under Florida Statutes § 48.493(1)(a)(2).[6]

It is, therefore, **ORDERED:**

Defendant's Motion to Dismiss (Doc. 23) is **GRANTED.** Plaintiff's Motion for Preliminary Injunction (Doc. 18) is **DENIED AS MOOT**. The Clerk is directed to close the case.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 23, 2014.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[5] The *Korman* court cited Florida Statutes § 48.193(1)(b), which was renumbered as Florida Statutes § 48.193(1)(a)(2) in 2013. Ch. 2013-164 (C.S.S.B. 186), § 1, Laws of Fla. (amending Fla. Stat. § 48.193).

[6] Because this matter may be decided on the issue of Florida's long-arm statute, no further analysis is necessary. *See Am. Investors Life Ins. Co. v. Webb Life Ins. Agency, Inc.*, 876 F. Supp. 1278, 1280 (S.D. Fla. 1995) ("Only if the long-arm statute is satisfied should a court even reach the second step of considering whether the exercise of jurisdiction would controvert the Due Process Clause of the Fourteenth Amendment.").